887 A.2d 602

**Michael Joseph BERNADYN**

v.

**STATE of Maryland.**

**No. 91, Sept. Term, 2003.**

Court of Appeals of Maryland.

Dec. 8, 2005.

2

Carrie Leonetti and Michael R. Braudes, Asst. Public Defenders (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Diane E. Keller, Asst. Atty. General (J. Joseph Curran, Jr., Atty. General, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and JOHN C. ELDRIDGE (Retired, specially assigned), JJ.

RAKER, Judge.

We must decide in this case whether a medical bill seized by police at 2024 Morgan Street in Edgewood, Maryland, and addressed to "Michael Bernadyn, 2024 Morgan Street, Edgewood, Maryland 21040," when used by the State to establish that Bernadyn lived at that address, constitutes inadmissible hearsay. We shall answer that question in the affirmative and shall hold that the bill was inadmissible hearsay.

## I.

Michael Bernadyn, petitioner, was convicted by a jury in the Circuit Court for Harford County of the offenses of possession of marijuana, possession with intent to distribute, and maintaining a common nuisance. He was sentenced to a term of incarceration of five years on the possession with intent to distribute count and one year, consecutive, on the common nuisance count.

In August 2001, Deputy Mark Burkhardt of the Harford County Sheriff's Office conducted late night surveillance at 2022 and 2024 Morgan Street in Edgewood, Maryland, for approximately one week. He saw numerous people coming to and going from the two residences, meeting on the street, and conducting hand-to-hand drug transactions. According to Deputy Burkhardt, one of these individuals was Michael Bernadyn, who often walked in and out of 2024 Morgan Street. Deputy Burkhardt also saw several individuals whom he knew to be drug dealers entering 2024 Morgan Street on numerous occasions.

On August 29, 2001, Harford County Narcotics Task Force officers executed a search and seizure warrant at 2024 Morgan

Street. When they entered, petitioner was alone in the living room. The officers seized a marijuana pipe, marijuana stems and seeds, and a Johns Hopkins Bayview Physicians medical bill dated August 16, 2001, containing the language "Responsible party: Michael Bernadyn, Jr., 2024 Morgan Street, Edgewood, Maryland 21040." In the master bedroom, they seized men's clothing, approximately twenty-six bags of marijuana weighing approximately eight ounces and some marijuana stems and seeds.

At trial, Deputy Burkhardt testified that he had seized the Bayview Physicians bill from 2024 Morgan Street. The defense objected to admission of the bill in evidence, arguing as follows:

> "Reason for defense's objection is the paperwork says it's a billing statement from Johns Hopkins Bayview, has my client's address, 2024 Morgan Street, which I have no idea where they got this address. To let this evidence in would be extremely prejudicial to my client.... This company, this hospital, it's just a billing address. It could have been a third party who gave that address, not him. It doesn't say at some point he has reported this to be his address. That's a pretty big element of their case, and I don't think that's good enough. It could have been a third party that gave that address. We have no idea if it was him and who gave it.... That's why the hearsay rulings are the way they are. They can't say 'ordinary course of business.' "

The court asked defense counsel: "Is it your client's position he didn't live there or that was not his residence?" Defense counsel answered "Yes." The court never asked the State the purpose for which the evidence was offered, and without articulating any reasons, the court overruled the objection and admitted the bill into evidence.

> In closing argument, the State argued to the jury as follows: "Now, the defendant would argue ... that the defendant didn't live there. Well, we've shown that he lives there, and look at the facts that were before you. Deputy Burkhardt for about a week prior to the warrant goes down and is

working surveillance. He's in an apartment across from where the defendant lives. He sees the defendant coming in and out of that house or apartment.

\* \* \*

When the warrant's served, [Bernadyn is] the only one in there. He's the only one in there, and he is found in the living room.

Then you go to the officer who testifies, 'When we go in, we look for mail.' And I submit if you said to anyone, 'Go in this certain house,' and tell them no other information, 'and tell me who lives there,' odds are they are going to pick up a piece of mail and look at it, and they're going to say, [']Probably that person lives here because their mail is here.[']

\* \* \*

They pick a piece of evidence that shows who lives there, and what you have is a bill from Johns Hopkins Bayview Physicians, a statement date of August 16, 2001. That's almost two weeks before the warrant, but it's for services that are provided back in June of 2001.

Now we go back almost two months prior to the warrant being served. So I guess defense counsel and the defendant would have you believe that Johns Hopkins randomly picked an address of 2024 and just happened to send it there, and that's where the defendant lived. It doesn't happen, because you also—look, this is a bill, is what it is, and I am sure that any institution is going to make sure they have the right address when they want to get paid.

There is also an argument that, [']Well, the utilities are in [someone else's] name, they're not in this defendant's name; therefore, he must not live there.[']

I guess that argument would surprise my wife because my utilities are in my name, yet my wife and children live at the

house.[1] So I guess adopting that argument, and it applies to many people, if you will, roommates in college, generally one person will set up the utilities, but there would be multiple people who lived there. And, again, go back to the facts of the case. The officer still places him coming in and out of that location from the week prior to the warrant. So the evidence is that he lives there, and the evidence is that he certainly had control over that apartment or house, that he could come and go as he pleased."

In rebuttal closing argument, the State again referred to the bill, arguing as follows:

"If you walk into a house and somebody is standing there and you identify who that person is and you also find in the house personal mail for that individual, what is reasonable? What would you rely on in your every day decision making is that person lives there, and that is what the officers did. This bill that was sent, this isn't anyone else's bill because it says, 'Patient, Michael Bernadyn, Jr.' She argues, [']Well, we don't know where Johns Hopkins got that address from.['] Michael Bernadyn, Jr., is the patient, and it says, 'Responsible: Michael Bernadyn, Jr.' Again, did they randomly pick that address? I don't think so.

\* \* \*

The question you have to ask is: Why was the Defendant at that house? Was he just hanging out? Was it just bad timing? He just happened to be there that day when they served the search warrant? No. He lived there. Where was Nicole Majerowicz? They could have called her, too, as a witness. They could have called her to straighten everything up, and they didn't.

If you go in the house, again, you go back a week before the warrant, who does the officer see coming in and out of the

---

1. Although not raised as an issue in this case, this personalized argument, based on facts obviously not in evidence, is highly improper. Attorneys should be vigilant to avoid arguing facts not in evidence and arguments based merely on personal experiences.

house? It's this defendant. He's the person they see coming in and out of the house, not Nicole Majerowicz. It is this defendant who is in the house when the officers go in. It's this defendant. He's—the only person in that house is that defendant.

* * *

Again, was the State required to bring in every piece of documentation from the house? No. You know, how many pieces of paper are enough? How many pieces of paper are not enough? If I had brought in 20 pieces of paper with his name on it, would that have convinced anybody anymore? As opposed to a single piece of paper, especially when he is found in the residence?

Suppose there was no piece of paper. Does that mean he doesn't live there? No. The evidence, the reasonableness of the evidence is he lives there, with or without the piece of paper. Would 100 pieces of paper convince you? I don't know. Probably not. Do I have to bring all that in? No. It's not a hundred percent certainty."

Bernadyn was convicted on all counts.

Bernadyn noted a timely appeal to the Court of Special Appeals. That court affirmed. *Bernadyn v. State*, 152 Md. App. 255, 261, 831 A.2d 532, 536 (2003). We granted Bernadyn's petition for writ of certiorari to consider the following question:

Does a medical bill discovered at a crime scene and addressed to the defendant constitute inadmissible hearsay when introduced in evidence, without foundation or authentication under any exception to the hearsay rule, to prove that the defendant resided at the address on the bill?

378 Md. 613, 837 A.2d 925 (2003).

II.

We review rulings on the admissibility of evidence ordinarily on an abuse of discretion standard. *See Hopkins v. State*, 352 Md. 146, 158, 721 A.2d 231, 237 (1998). Review of

the admissibility of evidence which is hearsay is different. Hearsay, under our rules, *must* be excluded as evidence at trial, unless it falls within an exception to the hearsay rule excluding such evidence or is "permitted by applicable constitutional provisions or statutes." Md. Rule 5–802. Thus, a circuit court has no discretion to admit hearsay in the absence of a provision providing for its admissibility. Whether evidence is hearsay is an issue of law reviewed *de novo*.

Petitioner argues that the trial court erred in admitting the medical bill because it is inadmissible hearsay. He reasons that the bill is hearsay because it was an out-of-court statement offered for its truth and that the State failed to establish that the statement satisfied any exception to the hearsay rule. He contends that the sender's conduct of addressing a letter is an implied assertion and is thus hearsay. In the alternative, he argues that even if the bill is admissible under the business record exception, the State failed to lay a proper foundation for that exception.

The State argues that addressing a letter is nonassertive conduct, and, for this reason, the address on the letter is not a "statement," which is requisite for application of the hearsay rule. Adopting the reasoning of the Court of Special Appeals, the State argues that the bill was circumstantial evidence of the belief of Bayview Physicians that Bernadyn lived at the address and that this belief likely was accurate because Bayview Physicians had an interest in getting paid. The State also maintains that the bill was "admissible as circumstantial evidence connecting Bernadyn with the residence at 2024 Morgan Street," distinguishing between evidence offered for its truth and "circumstantial evidence" offered to link the defendant to a location or certain circumstances.

## III.

The question before us is whether a medical bill containing the words "Michael Bernadyn, Jr., 2024 Morgan Street, Edgewood, Maryland 21040" is hearsay when used to establish that Michael Bernadyn lived at 2024 Morgan Street

in Edgewood, Maryland. The State does not contend that the bill, if hearsay, falls within any exception to the rule against hearsay.

When the trial court ruled on Bernadyn's objection, defense counsel argued the following: (1) the bill "has my client's address"; (2) there was no basis for knowing how Bayview Physicians obtained the address; (3) the bill was hearsay; and (4) lack of foundation laid for the business record exception to the hearsay rule. The State was never asked by the trial court the purpose for which the evidence was offered, and the court simply overruled petitioner's objection, thereby admitting the evidence generally.

■ Maryland Rule 5–801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." We therefore begin our inquiry by identifying the proposition that the medical bill was offered to prove. *See, e.g., United States v. Hathaway*, 798 F.2d 902, 907 (6th Cir.1986) (stating that "[i]n addressing the question of whether the documents at issue were hearsay, we begin by determining what the evidence offered to prove"); J.F. Murphy, Jr., *Maryland Evidence Handbook* § 702, at 259 (3d ed. 1999 & 2004 Cum.Supp.) (same). The State offered the bill to prove that Bernadyn lived at 2024 Morgan Street.[2]

We examined whether implied assertions can be hearsay in *Stoddard v. State*, 389 Md. 681, 887 A.2d 564, 2005 WL 3309783 (2005).[3] In that case, we discussed the definitions under our rules of "statement" and "assertion" as follows:

---

2.  To establish the guilt of a defendant charged with possession with intent to distribute controlled dangerous substances, the State must prove beyond a reasonable doubt that the defendant exercised actual or constructive dominion or control over the drugs. *See State v. Suddith*, 379 Md. 425, 432, 842 A.2d 716, 720 (2004); *see also* Md.Code (2002), § 5–101(u) of the Criminal Law Article (" 'Possess' means to exercise actual or constructive dominion or control over a thing by one or more persons").

3.  We granted certiorari in *Stoddard* subsequent to briefing and argument in the instant case.

"Maryland Rule 5–801(c) defines 'hearsay' as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' The threshold questions when a hearsay objection is raised are thus (1) whether the declaration at issue is a 'statement,' and (2) whether it is offered for the truth of the matter asserted. If the declaration is not a statement, or if it is not offered for the truth of the matter asserted, it is not hearsay and it will not be excluded under the rule against hearsay.

'Statement' is defined by Md. Rule 5–801(a) as '(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.' The Rule does not define 'asserted' or 'assertion.' The Committee note to Rule 5–801 explains as follows:

> 'This Rule does not attempt to define "assertion," a concept best left to development in the case law. The fact that proffered evidence is in the form of a question or something other than a narrative statement, however, does not necessarily preclude its being an assertion. The Rule also does not attempt to define when an assertion, such as a verbal act, is offered for something other than its truth.' "

*Stoddard,* 389 Md. at 689, 887 A.2d at 568–69.

In *Stoddard,* we considered the question of whether testimony recounting an out-of-court utterance allegedly made by a non-testifying eighteen month old child to the effect of "is Erik going to get me" was hearsay when offered to prove that the child had witnessed Erik Stoddard commit the murder for which he was on trial. In ruling that this evidence was hearsay, we rejected the intent-of-the-declarant approach suggested in the Advisory Committee note to Federal Rule of Evidence 801(a), and instead retained the common law approach to implied assertions. We held as follows:

> "[W]here the probative value of words, as offered, depends on the declarant having communicated a factual proposition, the words constitute an "assertion" of that proposition. The

declarant's intent *vel non* to communicate the proposition is irrelevant. If the words are uttered out of court, then offered in court to prove the truth of the proposition—*i.e.* of the 'matter asserted'—they are hearsay under our rules." *Stoddard,* 389 Md. at 703–04, 887 A.2d at 577.

Our discussion and reasoning in *Stoddard* determines the outcome of this case. The bill contained two significant items: Bernadyn's name, and his address. The State did not argue simply that an item bearing Bernadyn's name was found in the house and that Bernadyn probably resided at the house. Rather, the State argued that the bill itself was "a piece of evidence that shows who lives there." In particular, the State suggested that Bayview Physicians had Bernadyn's correct address because "any institution is going to make sure they have the right address when they want to get paid."

In order to accept the words "Michael Bernadyn, Jr., 2024 Morgan Street, Edgewood, Maryland 21040" as proof that Bernadyn lived at that address, the jury needed to reach two conclusions. It needed to conclude, first, that Bayview Physicians wrote those words because it believed Bernadyn to live at that address[4], and second, that Bayview Physicians was accurate in that belief. As used, the probative value of the words depended on Bayview Physicians having communicated the proposition that Michael Bernadyn lived at 2024 Morgan Street. The words therefore constituted a "written assertion"—and hence, under Md. Rule 5–801(a), a "statement"—that Michael Bernadyn lived at 2024 Morgan Street. When used to prove the truth of that assertion, the bill was hearsay under Md. Rule 5–801(c), because it contained "a statement . . . offered in evidence to prove the truth of the matter asserted."

The case of *United States v. Patrick,* 959 F.2d 991 (D.C.Cir. 1992), is instructive. Patrick was indicted by a federal grand

---

4. The words would not be probative as offered if it could be established that Bayview Physicians *did not believe* Bernadyn to live at 2024 Morgan Street, *e.g.,* if it believed that Bernadyn received his mail there but lived elsewhere.

jury in the District of Columbia for possession with intent to distribute cocaine and firearm violations. *Id.* at 994. At trial, the government introduced into evidence a television sales receipt found in the bedroom where Patrick was arrested and allegedly living. The appellate court held that the receipt was inadmissible hearsay. *Id.* at 1001–1002.

The court reasoned that if the sales receipt had been used to show only that an item belonging to Patrick had been found in the same bedroom where the cocaine and weapon were found, it would not have been hearsay, because it would not have been offered to prove the truth of any statement. The problem, the court pointed out, was that the prosecution did not limit the use of the receipt to Patrick's name, but relied also on the address on the receipt to establish Patrick's guilt by proving that he resided at that address. *Id.* at 999–1000. The prosecutor stated the following in closing argument:

"Take, for example, an argument that might be made that that's not his apartment, that he doesn't live there, and that's not his bedroom, that he doesn't stay in that bedroom. Well, ladies and gentlemen, let's look at a couple of things that were taken out of that bedroom. Look at government's exhibit no. 14, the television receipt. You all had a chance to look at this closely before when it was admitted into evidence. G.A. Patrick, 818 Chesapeake Street, Southeast, Washington, D.C. 20020."

*Id.* at 1000. The court held that the receipt, as used by the prosecutor, constituted a statement that the defendant lived at 818 Chesapeake Street, and that the statement was hearsay. The court stated as follows:

"The receipt so used constituted a statement, namely that Patrick lived at 818 Chesapeake Street, Southeast, and that statement indisputably was hearsay. Unlike the use of the name on the receipt to show that an item belonging to Patrick was found in the bedroom, the prosecutor published Patrick's address as it appeared on the receipt to prove the truth of the matter asserted, that is, the address of Patrick's residence."

*Id. See also United States v. Watkins,* 519 F.2d 294, 296 (D.C.Cir.1975) (holding that a rent receipt and utility payment receipt were inadmissible hearsay when argued by prosecutor as evidence that defendant lived at the apartment and was paying the rent for that apartment).

The State argues that the bill was not hearsay and justifies its admission based upon the analysis of the Court of Special Appeals—that the bill was admissible because it was used as circumstantial evidence that Bayview Physicians *believed* Bernadyn lived at the address. As an alternate basis, that court reasoned that the bill was offered not to establish the truth of its contents, but rather for its probative value as circumstantial evidence connecting Bernadyn to the residence wherein he, the bill, and the drugs were all found. The State argues that the bill was admissible for a non-hearsay purpose, i.e., as circumstantial evidence that Bayview Physicians believed Bernadyn lived at the address. It suggests that this belief—likely accurate because Bayview Physicians had an interest in being paid—was then properly used as evidence that Bernadyn in fact lived at the address. We do not agree that this use of the bill would constitute non-hearsay.

The State's argument is based primarily on Wigmore's view that "[i]f, then, an utterance can be used as circumstantial evidence, i .e., without inferring from it as an assertion to the fact asserted, the hearsay rule does not oppose any barrier, because it is not applicable." 6 Wigmore, *Evidence,* § 1788 at 313 (Chadbourn rev.1976). For example, as to a statement used circumstantially to indicate the declarant's state of mind, Wigmore says the following:

> "To such a use, then, the hearsay rule makes no opposition, because the utterance is not used for the sake of inducing belief in any assertion it may contain. The assertion, if in form there is one, is to be disregarded, and the indirect inference alone regarded."

*Id.* at 320.

The non-hearsay theory of admissibility upon which the state relies permits the use of an utterance as circumstantial

evidence of a proposition *different from the one asserted.* For example, the bill might be admissible non-hearsay if offered to prove that Bayview Physicians remained in business as of the issue date, or that Bayview extended credit typically to its patients. But the chain of reasoning put forth by the State serves to prove the proposition asserted in the bill—*i.e.* that Bernadyn resided at 2024 Morgan Street. As such, the bill was used "for the sake of inducing belief in," or proving the truth of, an assertion contained within it. Therefore, the hearsay rule applies.

The State's suggestion—that it is not hearsay to use a statement as "circumstantial evidence" of the declarant's belief in the matter asserted and then to use that belief as evidence suggesting the truth of the matter asserted—would swallow the hearsay rule. *See e.g.,* Roger C. Park, McCormick on Evidence *and the Concept of Hearsay: A Critical Analysis Followed by Suggestions to Law Teachers,* 65 Minn. L.Rev. 423, 433 (1981) ("[a]cceptance of this reasoning . . . leads to a view that in effect abolishes the hearsay rule"). The use of a statement to prove the truth of the matter asserted almost always involves this two step inference, *i.e.* that the declarant believes the matter apparently asserted, and that the declarant's belief is accurate. The hearsay rule prevents using out-of-court statements for their truth because such statements are unreliable bases from which to infer the declarant's beliefs (the declarant may have been insincere or used ambiguous language), or the accuracy of those beliefs (the declarant's perception or memory may have been faulty). *See* Lawrence H. Tribe, *Triangulating Hearsay,* 87 Harv. L.Rev. 957, 958 (1974) (describing the link between an utterance and the matter asserted as involving first "a 'trip' into the head of . . . (the declarant) to see what he or she was really thinking," followed by "a trip out of the head of the declarant, in order to match the declarant's assumed belief with the external reality sought to be demonstrated").

The State also relies on the Court of Special Appeals' alternative rationale, that the bill was offered not to establish the truth of its contents, but rather for its probative value as

circumstantial evidence connecting Bernadyn to the residence wherein he, the bill, and the drugs were all found. Pointing to case law from other jurisdictions in which courts have admitted documents as circumstantial evidence tending to prove a defendant's connection with a location or with other people, the State maintains that the existence of an address on the bill makes no difference in the analysis. The State ignores the fact that evidence can serve more than one purpose. If the proponent of a statement claims to offer the evidence for a purpose other than its truth, but also offers the statement to prove the truth of a matter asserted therein, the court should either exclude the evidence or make clear that the evidence is admitted for a limited purpose. Defense counsel is then on notice that the evidence is admissible, *albeit* for a limited purpose, and may then request a limiting instruction.[5]

The rationale of the Court of Special Appeals, as well as the State's argument, is *post hoc* reasoning. The defense indicated that it was objecting because the bill "has my client's address." At no time did the prosecutor proffer to the trial judge the intended use of the evidence, nor did the trial court admit the evidence specially. The prosecutor's closing argument demonstrates that the bill was used for the truth of the statement contained therein—that petitioner lived at the address reflected on the bill.

The United States Court of Appeals for the Tenth Circuit discussed the impact of circumstantial evidence versus direct evidence in the hearsay context in *United States v. Jefferson*, 925 F.2d 1242 (10th Cir.1991). The court held that the trial court had admitted improperly a pager bill which the govern-

---

**5.** Ordinarily, when evidence is admitted that is admissible for one purpose but is not admissible for another purpose, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly. *See* Md. Rule 5–105. In this case, petitioner did not request a limiting instruction and the court did not instruct the jury as to any restriction. The trial judge, however, should have made known to the parties that the evidence was admitted for a limited purpose, if such was the case. Petitioner would have been alerted to request a limiting instruction. Alternatively, the court should have instructed the jury *sua sponte* as to the limited use of the evidence.

ment offered as circumstantial evidence to show "the character and involvement of the Defendant, and to corroborate the testimony of the cooperating witness." *Id.* at 1252. The court concluded that the government also offered the bill into evidence to prove the truth of the matter asserted—that the defendant had purchased pager service. The court stated:

"Whether evidence is offered as circumstantial evidence as opposed to direct evidence has nothing to do with whether it constitutes inadmissible hearsay. Granted, the pager bill combined with agent Young's testimony regarding the use of pagers by drug dealers was introduced as circumstantial evidence of [the defendant's] intent to possess and distribute the cocaine. However, the fact that the evidence was introduced to link circumstantially the accused to the crime does not render the hearsay violation any more acceptable."

*Id.* at 1252–53.

*United States v. Mahar*, 801 F.2d 1477 (6th Cir.1986), also illustrates the principle that the admissibility of documents depends on the purposes for which they are offered. Defendant Mahar, along with Inner–City Medical Clinic and others, was charged in a multi-count indictment, including conspiracy to distribute controlled dangerous substances. Mahar was the clinic's president. At trial, the government offered into evidence twelve pages of handwritten notes seized from the clinic. The notes were undated and unsigned, and were found among business records in an examining room. The notes focused on a Medicaid investigation into the clinic's activities. The government argued that the notes were not offered to prove the truth of the matters asserted and thus were not hearsay.

The United States Court of Appeals for the Sixth Circuit rejected the government's argument, holding that the evidence was hearsay. The court pointed out that the government's argument on appeal that the notes were not hearsay appeared to be an after-the-fact justification for the admission of the notes. *Id.* at 1492. The government's use of the notes at trial, particularly in the prosecutor's rebuttal closing argu-

ment, showed that the government used the notes for the truth of the matters asserted. *Id.* The court concluded, "Had government counsel similarly intended to use Exhibit 22A solely for non-hearsay purposes, and not to prove the truth of the matters asserted, then the government's intent should have been explained to the court and defense counsel so that an appropriate limiting instruction could have been requested." *Id.* at 1492 n. 23. *See also United States v. Lieberman,* 637 F.2d 95, 101 (2d Cir.1980) (holding that hotel registration card with address was admitted properly for the limited nonhearsay purpose of proving solely that the person who registered at the hotel was the same person who was arrested by a DEA agent, the agent having examined the same address on the driver's license carried by the arrestee).

*United States v. McGlory,* 968 F.2d 309 (3rd Cir.1992) is instructive. McGlory and others were convicted of firearm violations and conspiracy to distribute heroin. The police seized notes and scraps of paper from McGlory's trash and residences. The government argued that the notes were circumstantial evidence linking McGlory and the other defendants to a narcotic conspiracy and were not hearsay. *Id.* at 332. The defendants argued that they were offered for the truth of the matter asserted and as such, were hearsay.

The United States Court of Appeals for the Third Circuit held that the notes, while technically not assertions by McGlory, were used to imply the guilt of the defendants, and were hearsay. They were inadmissible unless they fit within an exception to the hearsay rule. The court emphasized that statements, while not technically admitted for the truth of the matter asserted, nonetheless may violate the hearsay rule when used to imply the guilt of the defendant. The court emphasized that it "has disfavored the admission of statements which are not technically admitted for the truth of the matter asserted, whenever the matter asserted, without regard to its truth value, implies that the defendant is guilty of the crime charged." *Id.* The court explained:

"In [*U.S. v.* ]*Reynolds,* 715 F.2d 99 [ (3rd Cir.1983) ], we held that statements containing express assertions not of-

fered for their truth may contain implied assertions that qualify as hearsay because the truth of the implied assertions is at issue and relevant to guilt. We encounter this problem when:

> 'the matter which the declarant intends to assert is different from the matter to be proved, but the matter asserted, if true, is *circumstantial* evidence of the matter to be proved.'
>
> *Id.* at 103 (quotation omitted) (emphasis added)."

*Id.* The court pointed out that in this situation, the statement is subject to a hearsay objection. *Id.*

The Bayview Physicians medical bill, when offered to prove the truth of its assertion that Bernadyn lived at 2024 Morgan Street, constituted hearsay and was inadmissible unless it satisfied an exception under the hearsay rule.

▮ Although the State never argued in the Circuit Court that the bill, although hearsay, was admissible as a business record pursuant to Rule 5–803(b)(6), defense counsel made clear that the source of the information was unknown and unverified and that the State failed to establish that the bill was made and kept in the "ordinary course of business." The trial judge never required the prosecutor to proffer why the evidence was offered, but instead simply overruled defense counsel's objection, and admitted the evidence. In any case, the statement is not admissible under the business record exception.

Maryland Rule 5–803(b)(6), derived from Federal Rule of Evidence 803, provides that evidence is not excluded by the hearsay rule, even though the declarant is available as a witness, if it qualifies as a record of regularly conducted business activity. Rule 5–803(b)(6) provides that the following are not excluded by the hearsay rule, even though the declarant is available as a witness:

> "Records of regularly conducted business activity. A memorandum, report, record, or data compilation of acts, events, conditions, opinions, or diagnoses if (A) it was made at or near the time of the act, event, or condition, or the rendition

of the diagnosis, (B) it was made by a person with knowledge or from information transmitted by a person with knowledge, (C) it was made and kept in the course of a regularly conducted business activity, and (D) the regular practice of that business was to make and keep the memorandum, report, record, or data compilation. A record of this kind may be excluded if the source of information or the method or circumstances of the preparation of the record indicate that the information in the record lacks trustworthiness. In this paragraph, 'business' includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

The Rule sets out certain conditions precedent for admission.

In order for a business record to be admitted into evidence, the Maryland Rules of Evidence require the proponent of the evidence to satisfy the requirements of Rule 5–803(b)(6) and to establish its authentication or identification. *See* Rule 5–901; *Dept. of Public Safety v. Cole,* 342 Md. 12, 29, 672 A.2d 1115, 1123 (1996). Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to certain identified documents. *See* Rule 5–902; *State v. Bryant,* 361 Md. 420, 426–27, 761 A.2d 925, 928–29 (2000). A record of regularly conducted business activity, to be admissible as a self-authenticating document under Rule 5–902(11), must satisfy the notice requirement of the rule and contain a certification that it falls within the scope of Rule 5–803(b)(6).[6]

In the instant case, the State did not call any witness from Bayview Physicians to show that the bill was made at or near the time of any event; that it was made by a person with

---

6. It need not be decided in this case whether the bill would be admissible as self-authenticating under the common law, *see, e.g., Pine Street Trading v. Farrell Lines,* 278 Md. 363, 364 A.2d 1103 (1976); *Thomas v. Owens,* 28 Md.App. 442, 346 A.2d 662 (1975), or whether the common law rules of evidence survive the adoption of the Maryland Rules of Evidence, because even under the common law, the address on the bill is double hearsay, and under the common law and the Maryland Rules, each level of hearsay must satisfy an exception to the rule of exclusion before it is admissible. *See, e.g., Hadid v. Alexander,* 55 Md.App. 344, 350, 462 A.2d 1216, 1220 (1983).

knowledge, or from information transmitted by a person with knowledge; that the bill was made and kept in the course of regularly conducted business activity; or that it was the regular practice of Bayview Physicians to make and keep that record. Even assuming that the State had called a witness to establish the prerequisites under (A), (C), and (D) of Rule 5–803(b)(6), the State would still have had to show that the address on the bill was made by a person with knowledge or from information transmitted by a person with knowledge of the information.

Moreover, the address on the bill is hearsay within hearsay. There is no evidence whatsoever as to the source of the information contained on the bill and any conclusion would be speculation. The address on the bill, perhaps entered by an employee in the ordinary course of business, was from information supplied by another person. Rule 5–805 provides that "[i]f one or more hearsay statements are contained within another hearsay statement, each must fall within an exception to the hearsay rule in order not to be excluded by that rule." *See* Lynn McLain, *SelfAuthentication of Certified Copies of Business Records*, 24 U. Balt. L.Rev. 27, 75 (1994). No such proof was offered in this case.

In *United States v. Patrick*, 959 F.2d 991 (D.C.Cir.1992), the court rejected the business record exception as a basis for the evidence's admissibility, reasoning that the address on a Circuit City receipt was "double hearsay," or hearsay within hearsay. The court concluded as follows:

"We first note that the address on the receipt reflects not only the assertion of the Circuit City employee who made out the receipt but also the assertion of the customer who provided the address. The address was thus hearsay within hearsay, *see* Fed.R.Evid. 805, and was not admissible to prove Patrick's residence unless both the customer's statement and the employee's recording of it were admissible. See *United States v. Baker*, 693 F.2d 183, 188 (D.C.Cir.1982) ('Double hearsay exists when a business record is prepared by one employee from information supplied by another'; '[an] outsider's statement must fall within another hearsay

exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have.'); *see also Wilson v. Zapata Off–Shore Co.*, 939 F.2d 260, 271 (5th Cir.1991) ('Rule 803(6) does not, by itself, permit the admission of [a] business record' when the 'source of ... information is an outsider.'). Neither was admissible here.

The government did not call a Circuit City employee who could show that 'it was the regular practice' of Circuit City to make the receipt. Fed.R.Evid. 803(6). But even if an employee had been called and had testified that it was his regular practice to record the information, his testimony would have answered only part of the question we face; we still must determine the truth of the information provided because rule 803(6) also requires that the information be 'transmitted by, a person with knowledge.' Fed.R.Evid. 803(6).

\* \* \*

We do not read the rule so literally as to require that the person transmitting the information must himself be under a business duty to provide accurate information. . . .

\* \* \*

[I]n deciding whether the receipt was properly admitted, we do not require that Patrick be under a business duty to provide the information. Rather, it is sufficient if it is shown that Circuit City's standard practice was to verify the information provided by a customer. Because we do not know if this was the case, we conclude that it was error to allow the receipt to be used as it was in closing argument."
*Id.* at 1000–02 (some citations omitted).

In *United States v. Baker*, 693 F.2d 183 (D.C.Cir.1982), the United States Court of Appeals for the District of Columbia Circuit addressed the issue of double hearsay. The defendant was charged with selling government property, treasury checks, in violation of 18 U.S.C. § 641. As evidence of the

defendant's lack of authority to sell the checks, the government offered forms filled out by intended payees. The trial court admitted these forms as business records. The appellate court ruled that the forms were hearsay because they were offered to prove the truth of the matter asserted—that the payees did not receive their checks and that the defendant was not authorized to have them. The court explained that "[d]ouble hearsay exists when a business record is prepared by one employee from information supplied by another employee." *Id.* at 188. Federal Rule 803(6) excuses the hearsay within hearsay, or multiple hearsay, "[i]f both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business." *Id.* The court noted that if the source of the information is an "outsider," the rule does not, by itself, permit the business record into evidence. The court restated the requirement that the "outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have." *Id.* The court held the evidence to be inadmissible hearsay because the intended payees were not acting in the regular course of business, and their statements did not fall within any other hearsay exception. *Id.*

In *Collins v. Kibort*, 143 F.3d 331 (7th Cir.1998), the United States Court of Appeals for the Seventh Circuit discussed the admissibility of medical bills as a business record under Federal Rule of Evidence 803(6). Noting that medical bills are admissible as business records under the Rule, the court stated that the proponent of the evidence must establish a proper foundation as to the reliability. *Id.* at 337. On appeal, one of the defendants, Educational Therapy Center (ETC), argued, on hearsay grounds, that it was error to permit Collins to testify about his medical bills. The court agreed with ETC, finding that although the court did not doubt that the hospital maintains its bills in the course of its regularly conducted activity and that it was part of the hospital's regular business practice to create and maintain its bills, "the business

record exception does require that the witness have knowledge of the procedure under which the records were created." *Id.* at 338. Collins was not qualified to testify about the reliability of the medical bills because he knew nothing about the billing practices of the hospital.

Likewise, the State in the case *sub judice* presented no evidence regarding the billing practices of Bayview Physicians and the source of the name and address on the medical bill. Even if we were to apply the business record exception where the employee had a duty to verify the information, the State has not presented any evidence to satisfy this requirement. *See, e.g., United States v. Reyes,* 157 F.3d 949, 952 (2d Cir.1998) (holding that the person making the record need not have a duty to report so long as someone has a duty to verify the information reported); *United States v. Console,* 13 F.3d 641, 657–58 (3d Cir.1993) (holding that business record exception may apply if it is shown that it is the standard practice to verify the information or that the information satisfied another hearsay exception); *United States v. McIntyre,* 997 F.2d 687, 700 (10th Cir.1993) (finding that business record exception may apply if business requires verification of accuracy of information provided by outside person); *Patrick,* 959 F.2d at 1001 (same).

The medical bill in question was offered to prove the truth of a matter asserted therein, argued for that purpose to the jury, and admitted generally without limitation to a non-hearsay purpose. This hearsay document did not fall within any exception to the hearsay rule. Accordingly, we hold that the Circuit Court erred in overruling Bernadyn's objection.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY HARFORD COUNTY.*

Dissenting Opinion by WILNER, Judge, which BATTAGLIA, Judge, joins.

Pursuant to a search warrant that is unchallenged in this appeal, the police entered 2024 Morgan Street, a residential unit in Edgewood, Maryland, and found Michael Bernadyn alone in the living room. During their week-long surveillance of the property leading up to the issuance of the warrant, the police had observed a great deal of drug-trafficking in the vicinity of that residence, and, in connection therewith, had seen Bernadyn open the door for known drug dealers approaching the place and, after looking up and down the street, allow those people to enter.

In their execution of the warrant, the police found and seized (1) from the master bedroom, five one-ounce bags and 20 smaller bags of marijuana and a coffee can containing marijuana seeds and stems, and (2) from the living room where Bernadyn was discovered, a small tin containing marijuana, a marijuana pipe, and a bill from Johns Hopkins Bayview Physicians addressed to Bernadyn at 2024 Morgan Street. When that bill, *which Bernadyn has neglected to include in the record before us*, was offered into evidence at trial, defense counsel objected and informed the court:

> "Reason for defense's objection is the paperwork says it's a billing statement from Johns Hopkins Bayview, has my client's address, 2024 Morgan Street, which I have no idea where they got this address. To let this evidence in would be extremely prejudicial to my client.
>
> * * *
>
> This company, this hospital, it's just a billing address. It could have been a third party who gave that address, not him. It doesn't say at some point he has reported this to be his address. That's a pretty big element of their case, and I don't think that's good enough. It could have been a third party that gave that address. We have no idea if it was him and who gave it."

Although in the course of making her objection to the billing statement, defense counsel said that Bernadyn denied having any connection with 2024 Morgan Street, Bernadyn never testified or offered any affirmative evidence in that regard. Deputy Sheriff Burkhardt, the officer in charge of the investigation, testified that the apartment was leased to one Nicole Majerowicz and that a utility bill addressed to her was found at the home.[1] He also said that, in executing search warrants, he found it "very common" for apartments and utility bills to be in "someone else's" name. He said that he found both men's and women's clothing in the main bedroom but only women's clothes in the closet in the second bedroom.

As the Court notes, the trial court never asked the prosecutor to explain the purpose for which the bill from Hopkins was offered but, instead, summarily overruled the objection and admitted the billing statement. At the time the statement was admitted, therefore, no particular purpose or relevance of the document was asserted. Later, in closing argument, the prosecutor, in response to Bernadyn's factually unsupported *argument* that he did not live at the Morgan Street residence, asked the jury to examine the facts—the surveillance revealing Bernadyn in and out of the property, his being the only person there when the warrant was executed, and the bill from Hopkins. As to that bill, the prosecutor noted:

"So I guess defense counsel and the defendant would have you believe that Johns Hopkins randomly picked an address of 2024 and just happened to send it there, and that's where the defendant lived. It doesn't happen, because you also— look, this is a bill, is what it is, and I am sure that any institution is going to make sure [that] they have the right address when they want to get paid."

In rebuttal closing argument, the prosecutor again stressed the reasonable inference to be drawn from finding the bill addressed to Bernadyn:

---

1. It is of some interest that Bernadyn, who seems so concerned about the purity of the hearsay rule, never objected to the utility bill or the testimony regarding it, which would seem to suffer from the same alleged defect as the Hopkins statement.

"If you walk into a house and somebody is standing there and you identify who that person is and you also find in the house personal mail for that individual, what is reasonable? What would you rely on in your every day decision making is that person lives there, and that is what the officers did. The bill that was sent, this isn't anyone else's bill because it says, 'Patient, Michael Bernadyn, Jr.' She argues, well, we don't know where Johns Hopkins got that address from. Michael Bernadyn, Jr., is the patient, and it says, 'Responsible: Michael Bernadyn, Jr.' Again, did they randomly pick that address? I don't think so."

Solely from that closing argument, *to which no objection was made,* the Court declares that the statement of Bernadyn's name and address on the bill constituted an out-of-court "assertion" by Hopkins that Bernadyn lived at that address, that the assertion was offered for its truth, that the statement therefore constituted hearsay, that it fell within none of the recognized exceptions to the Rule barring hearsay evidence, that it was therefore inadmissible, and that Bernadyn's convictions for possession with intent to distribute the drugs found in the apartment and maintaining a common nuisance must be reversed. With respect, I dissent. I do not believe that the billing statement, the only challenged aspect of which is Bernadyn's name and address, necessarily constituted hearsay at all. I would hold that the bill was properly admissible as direct relevant evidence that Bernadyn received mail at that address and, consequently, as circumstantial evidence that he had some dominion and control over the apartment.

The problem that I have with the Court's approach is that it is flatly inconsistent with the majority view around the country, it is implicitly inconsistent with a line of unchallenged decisions of the Court of Special Appeals dating back to 1973, it ignores what clearly can be accepted as common knowledge, and in a broad-brush, wholly unsupported footnote, it places a duty on the judge that properly belongs on defense counsel.

Maryland Rule 5–801, taken verbatim from Federal Rule of Evidence 801, defines "hearsay" as "a statement, other than

one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter *asserted.*" (Emphasis added). A "statement," in turn, is defined in those Rules as "(1) an oral or written *assertion* or (2) nonverbal conduct of a person, if intended by the person as an *assertion.*" (Emphasis added). Through the combination of these definitions, the issue here comes down to whether the challenged evidence constitutes an "assertion" by an out-of-court declarant, presumably the billing clerk for Johns Hopkins Bayview Physicians, that was offered for its truth.

Bernadyn argues primarily that the addressing of the bill to him at 2024 Morgan Street constitutes an *express* assertion by Hopkins that he lived at that address. He posits that "[w]hen a person addresses a stamped envelope to 'John Smith, 100 Main Street, Annapolis, Maryland,' he is asserting to the postman, 'I want this delivered to John Smith. *He lives at 100 Main Street,*'" and the Court seems to agree with that proposition. As an alternative, Bernadyn contends that such conduct constitutes an implied assertion that Smith lives at that address and that, in contrast to the Federal approach and that of most States, Maryland continues to recognize implied assertions as falling within the hearsay rule.

In *Stoddard v. State*, 389 Md. 681, 887 A.2d 564 (2005), this Court ignored the nearly universal view throughout the country, of both State and Federal courts, that conduct, whether verbal or non-verbal, does not constitute an implied "assertion" for purposes of the hearsay rule unless intended as such and, instead, kept its head firmly entombed in the early Nineteenth Century on that issue. It now proposes to extend that lamentable approach and ignore another line of solid authority throughout this country. Why the Court insists on being a parade of one—of marching off all by itself in one direction when nearly everyone else is marching the other way—is a mystery to me.

Almost all of the courts that have considered the principal issue now before us have held that letters, bills, and other documents addressed to a defendant at the place where they

are found do *not* constitute assertions that the defendant lives at that place and are therefore *not* inadmissible under the hearsay rule. In *State v. Peek,* 89 N.C.App. 123, 365 S.E.2d 320, 322 (1988), a case strikingly similar to the one now before us, the North Carolina court held that "[o]n its face, a written or printed name and address on an envelope asserts nothing." The court acknowledged that, from the affixing of the name and address and mailing the material so addressed, it may be inferred that the sender *believed* that the person named lives at that address, but it concluded that such belief is not intended as an assertion, does not constitute an assertion and, because it does not constitute as an assertion, the name and address do not constitute hearsay.

A similar conclusion, for the same reason, was reached in *Hernandez v. State,* 863 So.2d 484, 486 (Fla.Dist.Ct.App.2004), *review denied,* 874 So.2d 1191 (Fla.2004). There, too, a defendant charged with possessing drugs found in an apartment leased to his girlfriend complained that an unopened letter addressed to him at that apartment and found in the bedroom constituted an extra-judicial assertion that he lived there and therefore amounted to inadmissible hearsay. Citing *Peek,* the Florida court responded that the defendant's name and address printed on the envelope was not intended to communicate the thought that the defendant lived there and was not, therefore, an assertion. *Hernandez, supra,* 863 So.2d at 486. According to the court, the envelope was not offered for the truth of the matter "but as circumstantial evidence that Hernandez stored his property, including his correspondence, in the bedroom. The presence of the envelope in the bedroom tended to prove that appellant controlled the room, and that the contraband found there belonged to him." *Id.*

The same conclusion was reached in *Shurbaji v. Com.,* 18 Va.App. 415, 444 S.E.2d 549, 551 (1994). There, as here, the defendant in a drug possession case challenged the admissibility of bills found in the master bedroom loaded with drugs. Rejecting his claim that a utility bill addressed to him constituted inadmissible hearsay, the court concluded:

"The challenged documents in this case were *not* offered for the truth of the matter asserted therein. The utility bills were used as circumstantial evidence that appellant received or stored his property, including his correspondence, in the master bedroom. It was irrelevant what the utility bills 'asserted therein.' Rather, the mere existence of the bills in the master bedroom tended to prove that appellant controlled the room, and that the cocaine and paraphernalia found there belonged to him."

*Shurbaji, supra,* 444 S.E.2d at 551.

*See also United States v. Singer,* 687 F.2d 1135, 1147 (8 th Cir.1982), *adopted on reh'g en banc,* 710 F.2d 431 (8 th Cir.1983); *United States v. Hazeltine,* 444 F.2d 1382, 1384 (10th Cir.1971); *People v. Hester,* 87 Ill.App.3d 50, 42 Ill.Dec. 611, 409 N.E.2d 106, 109–10 (1980); *State v. McCurry,* 582 S.W.2d 733, 734 (Mo.Ct.App.1979); *Haynes v. State,* 475 S.W.2d 739, 742 (Tex.Crim.App.1972). The Court obviously does not like these cases, so it ignores them, presumably on the theory that if it doesn't mention them they don't exist.

Although this Court has not previously considered the hearsay question raised in this case, the Court of Special Appeals, in an unbroken and unchallenged line of cases, has often noted the existence of letters and other correspondence addressed to a defendant at the premises in question as proper circumstantial evidence connecting the defendant to that premises. *See Nutt v. State,* 16 Md.App. 695, 706–07, 299 A.2d 468, 473 (1973), *cert. denied,* 269 Md. 764 (1973) (employment card and letter addressed to defendant at the premises evidenced that defendant had an ownership or possessory right in the premises); *Anaweck v. State,* 63 Md.App. 239, 244–45, 492 A.2d 658, 661 (1985), *cert. denied,* 304 Md. 296, 498 A.2d 1183 (1985), *overruled on other grounds by Wynn v. State,* 351 Md. 307, 718 A.2d 588 (1998) (bill and bank statement addressed to defendants at the premises where contraband was found sufficient to raise reasonable inference that premises was defendants' home); *Wink v. State,* 76 Md.App. 677, 684–85, 547 A.2d 1122, 1126 (1988), *aff'd,* 317 Md. 330, 563 A.2d 414 (1989) (Opinion by Bell, J.) (telephone bill addressed to defendant at

the premises coupled with defendant's presence during search was sufficient evidence to support inference that defendant had possessory interest in the premises); *Chan v. State*, 78 Md.App. 287, 317–18, 552 A.2d 1351, 1366 (1989) (letter addressed to "Sonny Chan" at premises coupled with defendant's presence at time of search supported inference that defendant had possessory interest in premises); *Lucas v. State*, 116 Md.App. 559, 564–65, 698 A.2d 1145, 1148 (1997), *cert. denied*, 348 Md. 206, 703 A.2d 148 (1997) (personal belongings of defendant, including receipt and letter addressed to defendant introduced as circumstantial evidence that defendant was habitual visitor and had significant connection to premises); *West v. State*, 137 Md.App. 314, 358, 768 A.2d 150, 174 (2001), *cert. denied*, 364 Md. 536, 774 A.2d 409 (2001) (identification card and utility bill addressed to defendant at the premises were evidence of defendant's possessory right in apartment where contraband found); *Herbert v. State*, 136 Md.App. 458, 468, 766 A.2d 190, 195 (2001) (mail addressed to defendant at the premises was circumstantial evidence that defendant had possessory interest in premises).

The Court's decision in this case may well preclude the admission of such documents and thus effectively render nugatory every one of those decisions. That would be most unfortunate, since this unbroken line of decisions from the Court of Special Appeals is consistent with holdings by courts throughout the country. *See Bailey v. State*, 307 Ark. 448, 821 S.W.2d 28, 30 (1991); *State v. Stiles*, 128 N.H. 81, 512 A.2d 1084, 1088 (1986); *State v. Wiley*, 366 N.W.2d 265, 270 (Minn. 1985); *State v. Salois*, 235 Mont. 276, 766 P.2d 1306, 1308 (1988); *Champeau v. State*, 678 P.2d 1192, 1194–95 (Okla. Crim.App.1984), *cert. denied*, 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 183 (1984); *Herrera v. State*, 561 S.W.2d 175, 179 (Tex.Crim.App.1978).

The Majority here chooses not to follow the approach of those courts throughout the country that have expressly rejected the kind of argument made by Bernadyn and to scrap, without comment, the long-established implicit rejection of that argument by the Court of Special Appeals and opts

instead to follow the view expressed in a split decision in *United States v. Patrick,* 959 F.2d 991 (D.C.Cir.1992), *abrogation recognized by United States v. Webb,* 255 F.3d 890 (D.C.Cir.2001). At issue there was the admissibility of a television sales receipt addressed to the defendant and found in the apartment bedroom. Curiously, the *Patrick* court held that the name on the receipt would not constitute hearsay, as it would show that an item belonging to the defendant was found in the bedroom, but, citing no direct authority, the panel majority concluded that the address on the receipt constituted an assertion that the defendant lived at that address. *Patrick, supra,* 959 F.2d at 999–1000. It did not explain why, under its theory that the address constituted an assertion, the name on the receipt was not also an assertion that Patrick purchased the set and, to that extent, the majority opinion seems internally inconsistent. The dissenting judge in *Patrick* pointed out, correctly, that the receipt was "not offered for the truth of the statement which it constitutes, but rather for the circumstantial value which it bears connecting Patrick with the apartment and the bedroom wherein he, the receipt and the television described were all found." *Id.* at 1003–04 (Sentelle, J., dissenting).

I think that the view of the two-judge panel majority expressed in *Patrick,* the argument made by Bernadyn here, and the Majority's acceptance of that argument are wholly unwarranted and ignore practical reality. Because Bernadyn has neglected to include the statement to which he objects in the record before us, we cannot tell precisely what it says, but, from some brief testimony about the exhibit, it would appear that it may well constitute an assertion that Bernadyn was a patient of Hopkins and that Bernadyn owed Hopkins some amount for services rendered by Hopkins. Those assertions are not at issue, however, because the bill was not offered to show their truth. Beyond that, there is, at best, a somewhat weak inference that the billing clerk at Hopkins, if he/she thought about the matter at all, believed that, if the bill was sent to Bernadyn at 2024 Morgan Street, he would receive it. Any such possible belief by the clerk does *not,* however,

constitute an assertion, either explicit or implicit, that Berna-dyn, in fact, lived at that address. *See* 5 JACK B. WEINSTEIN, ET AL., WEINSTEIN'S FEDERAL EVIDENCE 801.10[2][c] (Joseph M. McLaughlin ed., 2d ed.2004) ("words or conduct offered to show the actor's implicit beliefs do not constitute statements under the hearsay rule unless they were intended by the actor as an assertion").

There is nothing in this record to indicate who the billing clerk was or how he/she came up with the address placed on the bill, nor was there any need for such evidence. It can fairly be inferred, from common knowledge, that the billing clerk did not make any independent investigation of where Bernadyn lived or conducted his business but simply obtained the address from information in Bernadyn's patient file—information ultimately supplied by Bernadyn or someone on his behalf. From common experience, a court can properly take judicial notice of the facts that (1) when a person first appears at a medical office seeking treatment, he or she is required to give a receptionist, among other information, an address where the patient can be reached and bills and other communications can reliably be sent, and (2) the address so given will be entered in the person's file and used by the medical office in communicating with the person. There is no mystery about that and no occasion to speculate, as Bernadyn would have us do, as to the source or reliability of the information.

Indeed, that inference is fully consistent with the standard definition of "address." Bernadyn and the Majority seem to regard "address" as specifying only where a person lives, but that is not how the dictionaries define the term and it is therefore not the common understanding of the term. Black's Law Dictionary defines "address" as "[t]he place where mail or other communication is sent." BLACK'S LAW DICTIONARY 42 (8th ed.2004). Ballentine defines the verb form as "to indicate the destination of mail" and the noun form, as "[t]he direction given on a letter or other piece of mail as to the destination." BALLENTINE'S LAW DICTIONARY 28 (3rd ed.1969). American Heritage Dictionary defines the verb as "to mark with a

destination; *address a letter,*" and the noun as "[a] description of the location of a person or organization, as written or printed on mail as directions for delivery: *wrote down the address on the envelope* ... [or] [t]he location [where] a particular organization or person may be found or reached: *went to her address but no one was home.*" AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed.2000). Webster's New Universal Unabridged Dictionary defines the noun, in relevant part, first as "the place to which mail, etc. can be sent to one" and secondarily as "delivery directions on a letter, parcel, etc., including the name, title, and place of residence of the person for whom it is intended." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 22 (2d ed.1983).

In conformance both with these definitions and with common practice and in the absence of any evidence to the contrary, it is reasonable to assume (and unreasonable not to assume) that the billing clerk likely (1) had no idea of whether Bernadyn lived at 2024 Morgan Street, worked at that address, or simply desired that communications from Hopkins be delivered there, (2) never gave a moment's thought to the matter, and (3) cared not a whit which it was. Routinely sending the bill to that address can in no way properly be taken as an assertion by the billing clerk that Bernadyn actually lived at that address.

The cases noted above are correct in viewing the placement of the defendant's name and address on a letter found in the apartment as nothing more than a direction to the Post Office as to where to deliver the letter—a direction in this case derived, at best, from the billing clerk's presumed belief that, if delivered there, Bernadyn would likely receive it, which, in fact, he did.[2] There may be situations in which the belief inferable from merely sending a communication to a person at

---

2. The Court notes that the document at issue was the bill itself, not the envelope. We really don't know that, as the document was not included in the record. The parties refer to the statement, but that could as easily include the envelope. It would not make any difference in any event. We can fairly assume that the address stated on the bill was also stated on the envelope.

a particular address can, itself, be relevant and, by virtue of that relevance, constitute an assertion, but this is not such a case.[3]

Because, under these circumstances, the mere sending of a bill to Bernadyn at 2024 Morgan Street does not constitute an assertion by the billing clerk that Bernadyn lived at that address, the bill does not constitute a "statement" to that effect for purposes of Maryland Rule 5–801 and does not, therefore, constitute hearsay evidence. If the address stated on the bill does not constitute an assertion, it is not a "statement" for purposes of the hearsay rule.

The Majority finds great significance in the prosecutor's closing argument, as though that argument might have made otherwise admissible non-hearsay evidence non-admissible hearsay. That, too, does not stand up under analysis. As noted, when the bill was offered into evidence, defense counsel asserted only that she had no idea where Hopkins got that address and that "[t]o let this evidence in would be extremely prejudicial to my client."[4] The State was not asked to specify the purpose for the evidence and did not do so.

In my view, the bill was absolutely admissible as direct evidence that Bernadyn received business mail at 2024 Morgan Street, from which two fair and reasonable inferences could be drawn. The first is that he had some connection with that place. People do not ordinarily receive and retain mail at places with which they have no connection. A second inference, deducible from the first, is that found telling by the

---

**3.** It may be, for example, that in a landlord-tenant dispute where the landlord claims that the tenant prematurely vacated the leased premises on a certain date and moved to another location, a letter sent by the landlord to the tenant at the allegedly vacated premises after that date could be viewed as an implied assertion by the landlord that the tenant was still at the premises.

**4.** It is fair to assume that most evidence offered by the State in a criminal case will be prejudicial to the defendant. The State, after all, is seeking a conviction. Subject to those instances where the evidence may be excluded under Rule 5–403 because the prejudicial value of the evidence exceeds its probative value, the issue is not whether the evidence is prejudicial, but whether it is admissible.

aforecited cases, including the line of cases from the Court of Special Appeals—that the connection was sufficient to support a conclusion that Bernadyn exercised some control and dominion over the apartment. Whether that second inference would suffice on its own to permit that conclusion is not important, as there was ample other evidence of such a connection—the evidence obtained from the surveillance (including his letting known drug dealers in the house), his being the only occupant when the warrant was executed, and the fact that men's clothes were found in the master bedroom.

Because, in my view, the statement was clearly admissible for a non-hearsay purpose, the objection to it was properly overruled. Maryland Rule 5–105 provides, in relevant part, that, "[w]hen evidence is admitted that is admissible ... for one purpose but not admissible ... for another purpose, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly." (Emphasis added). Even if the statement would have been inadmissible if taken as a truthful assertion by the Hopkins billing clerk that Bernadyn lived at 2024 Morgan Street, no request was ever made by Bernadyn to limit the scope of the evidence and no objection was made to the prosecutor's closing argument. Hence, any complaint that the evidence was used for an improper purpose has been waived.[5] Bernadyn's current complaint is little more than appellate afterthought and should be rejected as both unpreserved and wholly lacking in merit. The judgment of the Court of Special Appeals should be affirmed.

Judge BATTAGLIA joins in this dissenting opinion.

---

5. The Court, in footnote 5, without any citation of authority, and without any pretense of logic, places a burden on the Court, *sua sponte* and without any request from either party, to inform the jury of a limited purpose of the evidence. There is no basis whatever for such a duty and, indeed, absent a valid request, it would be clear error for a judge, on his/her own initiative, to limit the use of evidence that is admitted without limitation. Would the Court countenance the exercise of such authority with respect to evidence offered by the defendant?