SCOTT SEWELL, THE YOUNGER *v.* STATE
OF MARYLAND

[No. 525, September Term, 1976.]

*Decided February 7, 1977.*

The cause was submitted on briefs to MOYLAN, MENCHINE and MOORE, JJ.

Submitted by *Stuart Jay Robinson, Assigned Public Defender,* for appellant.

Submitted by *Francis B. Burch, Attorney General, Bruce C. Spizler, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Stephen Sacks, Assistant State's Attorney for Baltimore City,* for appellee.

MOYLAN, J., delivered the opinion of the Court.

This appeal by Scott Sewell, Jr., following his conviction by a Baltimore City jury, presided over by Judge Albert L. Sklar, of five separate violations of the narcotics laws, involves an intriguing variation on an old theme — the excuse for non-production under the "Best Evidence" Rule.

Under that rule, sometimes referred to as the Original Document Rule, the best evidence of the contents of a writing is deemed to be the writing itself. Oral testimony or other secondary evidence of the terms of the writing may not be offered as a substitute for the original document itself unless the proponent can demonstrate an adequate reason for the non-production of the original. Instructive in this regard is McCormick, *Law of Evidence* (1st ed., 1954), Ch. 23, "The Requirement of the Production of the Original Writing as the 'Best Evidence,'" § 201, "Excuses for Non-production of the Original Writing — (a) Loss or Destruction," p. 413:

> "The professed purpose of the production of documents rule being to secure, not the writing at all hazards, but the best *obtainable* evidence of its contents, if the document cannot as a practical matter be produced, because of its loss or destruction, the production of the original is excused and other evidence of its contents is received. . . .
>
> Loss or destruction may sometimes be provable by direct evidence but more often the only available

method is circumstantial, usually by proof of search for the document and inability to secure it."

The "document" which could not be produced at the trial before Judge Sklar was a 2″ x 4″ piece of paper, seized from the appellant's premises during the execution of a search and seizure warrant, which paper gave measurements for the packaging of illicit drugs for street sales. It recited the number of grams which equal one "bag," and the quantity and quality of drugs that make what is known in the trade as a "Baltimore quarter" and a "New York quarter." Because at the trial before Judge Sklar the State sought to utilize the oral testimony of Officer Jennings to establish the contents of this writing, it became necessary for the State to explain the non-production of the original document. The following evidence was offered in that regard:

(1) The appellant had gone to trial initially on these charges before a jury, presided over by Judge John R. Hargrove, on September 29, 1975. On October 1, 1975, the third day of that first trial, a mistrial was declared when it was brought to the attention of Judge Hargrove that the appellant had, in the presence of the jury, eaten a piece of the evidence. Both Officer Jennings and the assistant prosecutor, Nelson Stewart, noticed that the piece of paper now in issue was missing. Officer Jennings had observed the appellant looking at the piece of paper. When Officer Jennings searched the appellant's books and papers at the trial table, the appellant, after being advised as to what was missing, exclaimed, "Oh, that piece of paper, I ate it."

(2) Two of the jurors at the first trial observed the appellant look at a piece of paper in the State's files "a couple of times" and then saw him slide it between "his papers." The jurors sent a note to Judge Hargrove, as a result of which the mistrial was declared.

The above evidence was initially proffered to the court out of the presence of the jury. The appellant's attorney, after initially objecting to the secondary evidence, withdrew his objection to the secondary evidence. He later objected,

however, "to the entire procedure." Judge Sklar permitted the State to offer the testimony as to the theft and destruction of the document by the appellant for two distinct and independent purposes:

(1) To explain the non-production of the original, and

(2) As evidence of the appellant's consciousness of guilt.

When the evidence was produced, the appellant moved for a mistrial. The motion was denied and that denial is the basis for his first contention.

We hold that Judge Sklar was correct in his ruling for either of two reasons. It is clear that before secondary evidence is admissible, it must be shown that the original was lost or destroyed. *Barranco v. Kostens*, 189 Md. 94, 54 A. 2d 326; *Leaman v. League Lumber Company*, 239 Md. 258, 211 A. 2d 296; *Anderson v. State*, 9 Md. App. 532, 538-539, 267 A. 2d 296; *Wentworth v. State*, 29 Md. App. 110, 122, 349 A. 2d 421. As the Court of Appeals pointed out in *Forrester v. State*, 224 Md. 337, 349, 167 A. 2d 878:

> "The best evidence of which the case is capable *must be produced, and secondary, or inferior, evidence is only admissible after a proper foundation has been laid, showing good and sufficient reasons for the failure to produce the primary evidence.*" (citations omitted) (emphasis supplied).

We hold that the evidence was also admissible substantively to show the appellant's "consciousness of guilt." As was noted by Dean Wigmore in 1 *Wigmore on Evidence* (3rd ed., 1940), § 173:

> "The commission of a crime leaves usually upon the consciousness a moral impression which is characteristic. The innocent man is without it; a guilty man usually has it. Its evidential value has never been doubted. *The inference from consciousness of guilt to 'guilty' is always available in evidence.* It is a most powerful one. . . ." (emphasis supplied)

Various modes of conduct have been held to be tacit admissions or evidence of the consciousness of guilt. Among them are flight from justice, including resistance or concealment, *Tasco v. State*, 223 Md. 503, 165 A. 2d 456; *Clay v. State*, 211 Md. 577, 128 A. 2d 634; the giving of false statements, *Burko v. State*, 19 Md. App. 645, 313 A. 2d 864; attempts by the accused to prevent a witness from testifying, *State v. Hicks*, 535 S.W.2d 308 (Mo. App. 1976); and the refusal to provide an exemplar for comparison purposes, *United States v. Franks*, 511 F. 2d 25 (6th Cir. 1975).

The destruction of evidence by the accused has always been recognized as indicative of "consciousness of guilt." *Scarborough v. State*, 3 Md. App. 208, 217, 238 A. 2d 297.

Under the circumstances, the questioned testimony was clearly admissible and the motion for a mistrial was properly denied.

The appellant raises a second contention, questioning the propriety of the judge's instructions on the subject of both flight and the destruction of evidence as indications of the "consciousness of guilt." The instruction was, in pertinent part:

> "There has been testimony here, of course, that at the time of the raid by the officers that the defendant left through a window from the third floor onto, I believe, the roof of the second floor. You may regard that as flight or an attempt to flee. If you regard that action as flight, flight alone is not controlling as to the guilt of the defendant, but it is a factor that may be considered by you in determining guilt as tending to show intent or consciousness of guilt.

> Similarly, you have heard the testimony in this case that at a prior trial the defendant is alleged to have taken the two by four, or three by four or five inch piece of paper allegedly containing figures and other writing on it. That, of course, is denied by the defendant. If you find that it did not occur,

then, of course, it should not carry any weight in reaching your verdict. If you find, however, that it did occur, then that alone is also not controlling, but it is also a factor that may be considered by you in determining guilt as tending to show intent or consciousness of guilt. That is the only area in which either flight or that activity, if you find that action did occur, that's up to you to determine whether you find it occurred or whether you find it didn't occur, but if you find it did occur, then it is only to be considered by you in that limited area."

In view of our discussion above, it follows ineluctably that the instruction was perfectly correct. See also *Harney v. United States*, 306 F. 2d 523 (1st Cir. 1962), *cert. den. sub nom. Lawton v. United States*, 371 U. S. 911; *United States v. Gottfried*, 165 F. 2d 360 (2nd Cir. 1948), *cert. den.* 333 U. S. 860; *Robinson v. State*, 180 So. 2d 282 (Ala. App. 1965); *People v. Weiss*, 327 P. 2d 527 (Cal. 1958); *People v. Kendall*, 244 P. 2d 418 (Cal. App. 1952), *cert. den.* 344 U. S. 880; *People v. Fiorito*, 108 N.E.2d 455 (Ill. 1952); *State v. Broadhurst*, 196 P. 2d 407 (Or. 1948), *cert. den.* 337 U. S. 906; *LaPrade v. Commonwealth*, 61 S.E.2d 313 (Va. 1950).

The appellant's three remaining contentions need not detain us long. In one of these, he claims that he was denied his constitutional right to a speedy trial. Since, to be sure, a period of some thirteen months elapsed between his arrest on December 28, 1974, and his ultimate trial on February 2, 1976, the delay is of constitutional dimension so as to necessitate an analysis under the four-factored "balancing test" of *Barker v. Wingo*, 407 U. S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972). The first of these factors, the length of delay, is significant standing alone. When we go on to look at the second factor — the reason for the delay — we perceive the fault to have been almost entirely that of the appellant himself. Early in the game, one month was lost between January and February, 1975, when the appellant requested a postponement of his preliminary hearing in order to retain private counsel. Counsel was not retained at that time. On June 12, 1975, the appearance of Earl Carey, Esq., was filed

for the appellant. During July, 1975, the appellant filed a motion for discovery and inspection and the State answered that motion. In August, 1975, the appearance of Earl Carey, Esq., was struck and the appearance of Barry Frame, Esq., was substituted. The appellant's trial began on September 29, 1975, some nine months after his arrest. As of that time, the appellant had never requested a speedy trial or filed any motion claiming a denial thereof. The first trial aborted on October 1, 1975, because the appellant ate the evidence. The trial was rescheduled for November 17, 1975, but was postponed at the request of the appellant. The trial was then again rescheduled for December 19, 1975, but was again postponed at the request of the appellant. The appellant filed his motion to dismiss the indictment for a lack of a speedy trial on December 29, 1975. A hearing was held on that motion on January 14, 1976, and it was denied. The trial was held on February 2, 1976. In terms of fault, the appellant has no one but himself to blame for whatever delay he thinks he suffered.

In terms of the "demand-waiver" factor, the appellant took no action with respect to a speedy trial until he moved to dismiss the indictment on December 29, 1975. Although his inaction does not in and of itself amount to a waiver of his constitutional right, the failure to assert the right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker v. Wingo, supra,* 407 U. S. at 531-532. As *Barker* went on to point out, the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Ibid.* We also note that there was no prejudice to the defense as such, since the only defense mounted was a strictly legal attack upon the adequacy of the probable cause to support the search and seizure warrant. In conclusion, balancing the four factors, we see no remote denial of the Sixth Amendment right to a speedy trial.

The appellant also attacks the sufficiency of the probable cause in the application for the search and seizure warrant. A significant part of the probable cause came from the mouth of a police informant. Applying to that informant

and to his information the "two-pronged test" of *Aguilar v. Texas*, 378 U. S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969), we note that there is no attack on the "basis of knowledge" prong. The attack is rather upon the veracity prong. In this regard, the affidavit in support of the warrant states:

> ". . . [The informant] is known to your affiant and is considered to be reliable due to the fact that this informant has supplied information to members of the C.I.D. Narcotic Unit during the past three (3) years that has led to the arrest of (16) sixteen individuals for various violations of the Narcotic Laws of Maryland."

We have no difficulty in concluding that this allegation is sufficient to satisfy the veracity test. *State v. Kraft*, 269 Md. 583, 307 A. 2d 683; *Stanley v. State*, 19 Md. App. 507, 313 A. 2d 847. The veracity was further demonstrated by a detailed recitation of a "controlled buy" by the informant on the date of the appellant's arrest. *Hignut v. State*, 17 Md. App. 399, 303 A. 2d 173.

The final contention is that the appellant was not present during a stage of the trial. He is referring to an in-chambers conference on the State's motion *in limine* requesting that the identity of the informant not be disclosed. No testimony was taken in this in-chambers conference and it was exclusively a discussion of law. It was not a critical stage of the trial so as to require the presence of the appellant. *Redman v. State*, 26 Md. App. 241, 337 A. 2d 441. See also *Brown v. State*, 225 Md. 349, 170 A. 2d 300; *Brown v. State*, 272 Md. 450, 325 A. 2d 557, and *State v. Tumminello*, 16 Md. App. 421, 298 A. 2d 202.

*Judgments affirmed; costs to be paid by appellant.*