40 A.3d 1093

**Michael David GORDON**

v.

**STATE of Maryland.**

No. 2968, Sept. Term, 2010.

Court of Special Appeals of Maryland.

March 30, 2012.

Renee M. Hutchins (University of Maryland School of Law, on the brief), Baltimore, MD, for Appellant.

Todd Hesel (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: KRAUSER, C.J., ZARNOCH, and WATTS, JJ.

WATTS, J.

After a trial held on December 7, 2010, and December 8, 2010, a jury sitting in the Circuit Court for Charles County convicted Michael David Gordon, appellant, of third-degree sexual offense and sexual solicitation of a minor. *See* Md. Code Ann., Crim. Law Art. ("C.L.") § 3–307(a)(4) (third-degree sexual offense); and C.L. § 3–324 (sexual solicitation of a minor). On February 8, 2011, the circuit court sentenced

appellant to ten years of imprisonment, with all but one year suspended, and five years of supervised probation.[1]

Appellant noted an appeal, raising two issues, which we quote:

I. Did the trial court err in allowing the State to prove the appellant's age, which was a material element of the case, through a detective's inadmissible hearsay testimony?

II. Did the trial court err by permitting the State to prove the contents of the appellant's driver's license through parol testimony instead of through the original copy of the driver's license?

We answer both questions in the negative. We, therefore, affirm the judgments of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

The acts for which appellant was convicted occurred on January 10, 2010, at a Pacific Sunwear Store where appellant worked. The day before the incident at issue in this case, Detective Klezia and another detective of the Charles County Sheriff's Office went to the store to speak with appellant about allegations not connected to this case. During the interview, Detective Klezia asked appellant for identification and appellant responded by giving Detective Klezia his Florida driver's license.

On January 10, 2010, Amanda M. visited the Pacific Sunwear Store, shopping with her friend Courtney S. Amanda M. and appellant became engaged in a conversation as she shopped. At the time, Amanda M. was fourteen-years-old.

Amanda M. testified that during her conversation with appellant on January 10, 2010, he told her he was seventeen years old. In an interview on March 31, 2010, Amanda M. advised detectives that appellant told her he was twenty years old. Amanda M. testified that on January 10, 2010, she

---

1. The circuit court found that the offense of sexual solicitation of a minor merged with third-degree sex offense for sentencing.

purchased perfume from the store but, after leaving the store, discovered the perfume was not in her shopping bag. Amanda M. returned to the store to retrieve the perfume later the same day. Amanda M. testified that she did not see appellant on the second trip, and that she and Courtney S. returned later to the store a third time.

As she was in the store on the third occasion, Amanda M. was trying on pants in a fitting room and asked appellant to bring her a pair in a different size. According to Amanda M., when appellant returned to the fitting room with new pants, he asked to see and touch her breasts and "lower areas." According to Amanda M., appellant then put his hand in her pants and began to "finger" her.[2] Amanda M. testified that while appellant was "fingering" her, he asked that she give him oral sex. Amanda M. declined, but testified, that she kissed appellant's penis. Appellant's counsel contended after trial and before this Court, that prior to trial, the prosecutor had not divulged information concerning Amanda M. allegedly having performed this act.

On January 14, 2010, appellant, accompanied by his fiancee, his fiancee's mother, and his daughter, was interviewed by Detective Klezia at the Charles County Sheriff's Office. Detective Klezia had telephoned to arrange the interview and appellant volunteered to drive to the station. During the interview, Detective Klezia asked appellant about the same incident that was discussed during his January 9, 2010, visit to the store-an incident unrelated to this case. During the interview, Detective Klezia asked for identification, and appellant again provided the Florida driver's license.

At trial, during direct examination, the prosecutor asked Detective Klezia whether he knew appellant's age. Detective Klezia responded that he had knowledge of appellant's date of birth based on having viewed his "identification." Appellant's counsel objected when the prosecutor asked Detective Klezia

---

2. Amanda M. testified that the term "finger her" described the act of appellant putting his fingers into her vagina.

how old appellant was, and the objection was sustained. The prosecutor again asked the detective for appellant's age, and the following exchange occurred:

[PROSECUTOR]: And the information that you obtained from [appellant] how old was [appellant]?

[APPELLANT'S COUNSEL]: Objection.

THE COURT: Detective is—am I correct to assume you never asked him his—his—his birth?

[DETECTIVE KLEZIA]—I don't recall specifically asking him for a date of birth but.

THE COURT: All Right.

And the only information you have is—is what he showed you; some document he showed you, a Driver's license?

[DETECTIVE KLEZIA]: Yes. Yes sir.

[PROSECUTOR]: Your Honor, may Counsel approach?

THE COURT: All right. Counsel please approach.

(Counsel approaches the bench)

[PROSECUTOR]: Your Honor, the information was provided to him by [appellant].

[APPELLANT'S COUNSEL]: Yes, but if we recall from the Motion Hearing he also had to show that information even to—to abide by the orders of the police.

That if you recall the Motion Hearing he had to present an I.D. to get into the headquarters.

THE COURT: Well, the basis of the objection is what?

[APPELLANT'S COUNSEL]: Its hearsay.

[PROSECUTOR]: And my response is that this would be admission by party (unintelligible).

[APPELLANT'S COUNSEL]: It's not an admission.

[PROSECUTOR]: It would be an adoptive admission.

[APPELLANT'S COUNSEL]: He never—he never—.

[PROSECUTOR]: He's—he's providing the identification on two separate occasions showing his personal identification.

[APPELLANT'S COUNSEL]: He never was asked to confirm it.

At this point, Detective Klezia and the jury were excused, and the following exchange occurred:

[PROSECUTOR]: ... I'm looking at [Maryland Rule] 5–803 and it looks like A(2). That's a statement by a party opponent—opponent.

\* \* \*

[PROSECUTOR]: "A statement of which the party has manifested an adoption on belief and its truth."

Detective Klezia asked him for identification. [Appellant] provides this identification on two separate occasions.... The fact that you're providing it means you're manifesting a belief that this is a true document. The information is here—in here, is true.

[APPELLANT'S COUNSEL]: It's not a statement.

[PROSECUTOR]: If it's not a statement then its not hearsay.

But this is something he's manifesting a belief in. He's asking for identification from [appellant]. [Appellant] provides this information to the Detective.

THE COURT: [Appellant's counsel]—.

[APPELLANT'S COUNSEL]: There's better evidence of this. There's (unintelligible) better evidence.

THE COURT: Well, there—there may very well be better evidence. The question is, is this admissible evidence.

[APPELLANT'S COUNSEL]: No, Your Honor. This is-he simply-he never adopted this as his Driver's License. He was asked to show identification and if you believe the witness that this is what he showed....

The circuit court permitted the testimony, ruling as follows:

THE COURT: All right.

I'm going to overrule the objection. I've had a chance to look at the Rule which I think is the appropriate Rule, 5–803.

**334**

"Hearsay Exceptions, Unavailability of Declarant not Required."

"The following are not excluded by the hearsay rule even though the declarant is available as a witness."

I think this word available—has to be determined in the context of—of Rule—the next Rule, 5-804, "Declarant Available" which has some circumstances where the declarant may be unavailable.

Here this is the—the declarant, if you will, is the Florida Motor Vehicle Administration—which would not be unavailable which would technically be available.

But I think that—[the prosecution] is correct in my opinion anyways.

It's a—statement which the—the Florida Motor Vehicle Administration has made about [appellant] and his age. And the party has manifested an adoption or belief in its truth and I think that—the party in this case would be [appellant] has manifested by presenting his conduct that—that he believes it to be true so he's adopted it.

I—I think that's what this Rule has to—has to—deal with.

So [appellant's counsel] I'm gonna overrule your objection. Is there anything else you want to state for the record?

I think you've stated your—your reasons pretty clearly but anything else?

[APPELLANT'S COUNSEL]: I did, Your Honor.

Obviously I—if there's any further questions about his age if the Court would recognize a continuing objection.

THE COURT: It will certainly—we'll note that.

\* \* \*

THE COURT: Members of the jury I—I've—I'm gonna overrule the objection that had been made and [prosecutor] is gonna continue.

Go ahead [prosecutor].

[PROSECUTOR]: So Detective Klezia, based on the identification provided to you twice by [appellant], what is [appellant's] date of birth?

[DETECTIVE KLEZIA]: 5/23/1982.

After the jury was excused for deliberation, the following exchange occurred between the circuit court, the prosecutor, and appellant's counsel:

THE COURT: Counsel, Before we—we recess I just have one other observation I want to put on the record and I'll give you a chance to—to comment on it if you—if you wish. You don't—you don't have to.

The big—legal issue in this case as—as far as—that I found troubling I guess, is this—the age of the—[appellant] coming in off the—off the Driver's License and the objection that it'd be hearsay.

I've already made a ruling on that. But I—I—but I've been thinking about it ever since then and I do feel that—I think it's appropriate if—if this is ever reviewed and it may or may not be and we just never—never know that—the Court put on that—it—it—from the Court's observation, the age of [appellant] other than it's an element that has to be proven but it doesn't really seem to be something that's disputed.

And I think that—that that may be something that the Court should really be putting on the record at this point so that—Appellate Court reviewing this has—has full context of what's going on here.

And it's almost to the point where the—the—the Court feels that—you could almost take judicial notice of [appellant's] age.

I know in the Application for Statement of Charges [t]he Date of Birth is listed as May 23rd, '82.

I note in the Indictment his Date of Birth is listed as May 23rd, 1982.

I note in the—all of the District Court documents I might just sort of refer as to that—and I don't know whether it's all picked off the same computer once it's entered. It—it all pops up May 23rd, 1982.

But I also note that in the—the—the bond that was filed here, Affidavit of the Bail Bondsman, it looks like—and I can't read the signature on—on this affidavit of April 30th, 2010, it's also handwritten in, May 23rd, '82.

So I—I—I feel that—some context as to this age—question is—is appropriate and those are my observations on it.

I don't know if either side wishes to—I think you're—you're positions are clear certainly [appellant's counsel] and [prosecutor], but I don't know if anybody else wants to comment further at this point.

[PROSECUTOR]: No, Your Honor.

[APPELLANT'S COUNSEL]: Well, Your Honor, I—I think I should respond somewhat.

THE COURT: Sure. Go ahead. Go ahead, please. Yes.

[APPELLANT'S COUNSEL]: Because I chose not to argue the age issue to the jury—.

THE COURT: Yes. Please.

[APPELLANT'S COUNSEL]: Doesn't mean that I waived it. I—I felt sort of—to go back to what I said to the jury, there were bigger fish to fry.

I suppose I could have argued that. I never considered that I waived it. I just chose not to argue it—.

THE COURT: I didn't meant to imply that—.

[APPELLANT'S COUNSEL]: To the jury.

THE COURT: But I—But I think it's good to put that on the record. I'm sorry.

[APPELLANT'S COUNSEL]: Moreover, none of those documents that Your Honor just mentioned are in the evidence.

THE COURT: No, that's correct.

Appellant was convicted of a third-degree sexual offense and sexual solicitation of a minor. Following his conviction, appellant filed a motion for new trial alleging that the State failed to disclose the conduct which constituted the basis of the third-degree sexual offense conviction. The court denied the motion. Appellant noted a timely appeal.

## DISCUSSION

### I.

 Appellant contends that the circuit court erred in allowing the State to prove his age, a material element of the case, through Detective Klezia's testimony. Appellant argues that Detective Klezia's testimony regarding his age was based solely on information the detective observed on appellant's Florida driver's license, and as such, constituted inadmissible hearsay. Appellant argues that Detective Klezia's testimony as to his age did not fall within any exception to the hearsay rule set forth in Md. Rule 5–803. Specifically, appellant contends that Detective Klezia's testimony did not satisfy Md. Rule 5–803(a)(2), which provides an exception to the hearsay rule for a "statement that is offered against a party, and is 'a statement of which the party has manifested an adoption or belief in its truth.'" Appellant maintains that to satisfy this exception the person making the statement must **expressly** adopt the statement. Appellant argues he did not expressly, or implicitly, manifest "an adoption or belief" in the truth of the date of birth displayed on the Florida license. Appellant contends that he "merely presented his license in submission to [an order from a law enforcement officer]."

The State responds that Detective Klezia's testimony regarding the date of birth on appellant's Florida driver's license was properly admitted under the adoptive admission exception to the hearsay rule. The State maintains that by presenting the license to Detective Klezia as evidence of his identity, "including [his] name and age," appellant "'manifested an adoption or belief' in the truth of that information." The State points out that, at trial, appellant failed to dispute the "trustworthiness" of the license. We agree with the State.

### Standard of Review

In *Bernadyn v. State*, 390 Md. 1, 7–8, 887 A.2d 602 (2005), the Court of Appeals explained the standard of review for hearsay determinations as follows:

We review rulings on the admissibility of evidence ordinarily on an abuse of discretion standard. Review of the admissibility of evidence which is hearsay is different. Hearsay, under our rules, *must* be excluded as evidence at trial, unless it falls within an exception to the hearsay rule excluding such evidence or is "permitted by applicable constitutional provisions or statutes." Md. Rule 5–802. Thus, a circuit court has no discretion to admit hearsay in the absence of a provision providing for its admissibility. Whether evidence is hearsay is an issue of law reviewed *de novo*.

(Emphasis in original) (internal citation omitted).

### Hearsay Generally

Md. Rule 5–801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "A hearsay statement may be admissible, however, under certain recognized exceptions to the rule if circumstances provide the requisite indicia of trustworthiness concerning the truthfulness of the statement." *Parker v. State,* 156 Md.App. 252, 259, 846 A.2d 485, *cert. denied,* 382 Md. 347, 855 A.2d 350 (2004) (internal quotation marks omitted). The hearsay exception set forth in Md. Rule 5–803(a)(2) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(a) Statement by party-opponent. A statement that is offered against a party and is:

. . .

(2) A statement of which the party has manifested an adoption or belief in its truth[.]

■ "Maryland Rule 5–803(a) permits the introduction of a hearsay statement that is offered against a party and is either the party's own statement or one in 'which the party has manifested an adoption or belief in its truth.' " *Armstead v.*

*State*, 195 Md.App. 599, 631, 7 A.3d 169 (2010), *cert. denied*, 418 Md. 191, 13 A.3d 798 (2011); *see also State v. Brown*, 327 Md. 81, 88, 607 A.2d 923 (1992) ("[A]n admission is a statement of pertinent facts which, in connection with proof of other facts, tends to prove guilt[.]" (citation and quotation marks omitted)).

The "express" adoption of an admission is not limited to a spoken or written adoption. In *Brandon v. Molesworth*, 104 Md.App. 167, 655 A.2d 1292 (1995), *aff'd in part and rev'd in part on other grounds*, 341 Md. 621, 672 A.2d 608 (1996), this Court extended the definition to non-spoken forms of communications that manifest a similarly unequivocal intent. In *Brandon*, 104 Md.App. at 176–77, 655 A.2d 1292, a wrongful discharge case, where plaintiff asked a coworker, in the presence of the defendant, employer, if she was being fired because she was a woman, the coworker replied, "[y]es, that's part of it," and the defendant did not say anything, but nodded in agreement. We concluded:

> We cannot see how [co-worker's] statement could fall outside this definition. Assuming the truth of [plaintiff's] allegations, [defendant's] nod clearly constituted either a manifestation of adoption or a belief in the truth of [co-worker's] statement. The only way to explain the nod—which is clearly admissible—is to introduce the statement that prompted it.

*Id.* at 198, 655 A.2d 1292.

### "Implied Assertions" in Hearsay

The Court of Appeals discussed the doctrine of "implied assertions" in hearsay in the twin cases of *Bernadyn*, 390 Md. 1, 887 A.2d 602, and *Stoddard v. State*, 389 Md. 681, 887 A.2d 564 (2005), decided on the same day. In *Stoddard*, 389 Md. at 683, 887 A.2d 564, the Court of Appeals held that an eighteen-month-old child's question—"Is Erik [the defendant] going to get me?"—was an implied assertion, and thus hearsay. The Court explained:

> Jasmine's fear of Stoddard is irrelevant unless it stems from a belief that she had seen Stoddard assault [the victim].

Although it is conceivable that Jasmine's fear, taken together with her presence during the relevant time frame, was circumstantial evidence that Jasmine witnessed Stoddard assault [the victim], this conceptualization is a distinction without a difference. Jasmine's fear of Stoddard is relevant only if it is rational, *i.e.,* only if it stems from a real-world condition or event. To rationally fear Erik Stoddard is to believe the proposition "I have a reason to fear Erik Stoddard." Jasmine's belief in this proposition is relevant only if the "reason" at issue is her having witnessed Erik assaulting [the victim]. Thus, in offering Jasmine's fear as evidence, the State implicitly would be offering Jasmine's belief in the proposition "I have a reason to fear Erik Stoddard and that reason is that I saw him assault [the victim]."

*Id.* at 690, 887 A.2d 564 (footnote omitted). The Court stated:

[W]ith respect to the four testimonial inferences, out-of-court words offered for the truth of unintentional implications are not different substantially from out-of-court words offered for the truth of intentional communications. The declarant's lack of intent to communicate the implied proposition does not increase the reliability of the declarant's words in a degree sufficient to justify exemption from the hearsay rule. Said another way, we conclude that a declarant's lack of intent to communicate a belief in the truth of a particular proposition is irrelevant to the determination of whether the words are hearsay when offered to prove the truth of that proposition.

We hold that where the probative value of words, as offered, depends on the declarant having communicated a factual proposition, the words constitute an "assertion" of that proposition. The declarant's intent *vel non* to communicate the proposition is irrelevant. If the words are uttered out of court, then offered in court to prove the truth of the proposition—*i.e.* of the "matter asserted"—they are hearsay under our rules.

*Id.* at 703–04, 887 A.2d 564 (footnote omitted).

In *Bernadyn,* 390 Md. at 3, 887 A.2d 602, the Court of Appeals held that a medical bill with the defendant's name and

address on it was inadmissible hearsay when offered to prove that the defendant lived at that address. The Court reasoned:

> In order to accept the words "Michael Bernadyn, Jr., 2024 Morgan Street, Edgewood, Maryland 21040" as proof that Bernadyn lived at that address, the jury needed to reach two conclusions. It needed to conclude, first, that Bayview Physicians wrote those words because it believed Bernadyn to live at that address, and second, that Bayview Physicians was accurate in that belief. As used, the probative value of the words depended on Bayview Physicians having communicated the proposition that Michael Bernadyn lived at 2024 Morgan Street. The words therefore constituted a "written assertion"—and hence, under Md. Rule 5–801(a), a "statement"—that Michael Bernadyn lived at 2024 Morgan Street. When used to prove the truth of that assertion, the bill was hearsay under Md. Rule 5–801(c), because it contained "a statement . . . offered in evidence to prove the truth of the matter asserted."

*Id.* at 11, 887 A.2d 602 (footnote omitted).

█ Returning to the case at hand, assuming Detective Klezia's testimony regarding appellant's age consisted of an implied assertion and was hearsay, the testimony was admissible pursuant to Md. Rule 5–803(a)(2), which provides an exception for a statement in which a party has manifested an adoption or belief in its truth. The Court of Appeals has interpreted Md. Rule 5–803(a)(2) as requiring an express adoption of the statement being offered. *Bellamy v. State,* 403 Md. 308, 326, 941 A.2d 1107 (2008). The express adoption need not be verbal or written, as long as it "clearly constitute[s] either a manifestation of adoption or a belief in the truth of [the] statement." *Brandon,* 104 Md.App. at 198, 655 A.2d 1292. On January 9, 2010, and January 14, 2010, Detective Klezia asked appellant for "identification," and on both occasions, appellant presented the Florida driver's license to Detective Klezia. By presenting the Florida driver's license, appellant represented that the document was a form of identification containing information about him, which he sought to have the detective accept as accurate.

Appellant's contention that he did not expressly, or implicitly, manifest an adoption or belief in the truth of any information contained on the Florida license is unpersuasive. One who presents a driver's license in response to a request for identification by a law enforcement officer clearly manifests an adoption or belief in the truth of information contained in the license, including the person's name and date of birth. Appellant presented the driver's license twice when asked for identification and failed to dispute the validity of the driver's license prior to trial, at trial, or before this Court. In presenting the license in response to the request for identification, appellant communicated to Detective Klezia that the information applied to him, *i.e.* that he was the person described in the identification, including the name and date of birth. We are not convinced by appellant's contention that his presentation of the license was limited only to an affirmation that his name was accurately displayed on the license. Appellant obviously sought to convince or advise Detective Klezia that information on the license, including the date of birth, was accurate. Any other conclusion would defy logic.

Appellant's reliance on *Bellamy* for the proposition that merely submitting the license to the detective was an act insufficient to constitute an adoption of its truthfulness is misplaced. In *Bellamy*, 403 Md. at 320, 941 A.2d 1107, the Court of Appeals addressed whether the State can be considered a party-opponent in a criminal prosecution for evidentiary purposes. Bellamy was convicted of first-degree murder and the use of a handgun in the commission of a crime of violence, and sentenced to life in prison. *Id.* at 318, 941 A.2d 1107. The State reached a plea agreement with Saunders, a co-defendant, which required Saunders to plead guilty to being an accessory after the fact to the murder, contingent on Saunders testifying, if required, at Bellamy's trial. *Id.* at 315, 941 A.2d 1107. At Saunders's guilty plea proceeding, the prosecutor stated that Saunders accurately identified Welch, not Bellamy, as the shooter. *Id.* at 316–17, 941 A.2d 1107. At his trial, Bellamy sought to have the prosecutor's statement from Saunders's guilty plea proceeding—identifying Welch as

the shooter—admitted as evidence. *Id.* at 318, 941 A.2d 1107. The State objected, arguing that the statement was inadmissible hearsay, and the trial court agreed. *Id.* Bellamy appealed contending, in pertinent part, that "the statement should have been admitted as an adoptive admission of a party opponent (the State) under Maryland Rule 5–803(a)(2)." *Id.* at 319, 941 A.2d 1107. "Bellamy's theory is that the State manifested its 'adoption or belief in . . . [the] truth' of Saunders's statement when the Assistant State's Attorney stated at the plea hearing, 'And it is our belief, based on our investigation and review of everything, is that he's been truthful.' " *Id.* at 320, 941 A.2d 1107 (omissions and alterations in original) (footnote omitted). The State, in contrast, argued on appeal that it "should not be considered a 'party-opponent' in a criminal prosecution for evidentiary purposes." *Id.* at 320, 941 A.2d 1107. The Court of Appeals held that:

> First, the Assistant State's Attorneys unequivocally manifested an adoption of or belief in Saunders's statement when they said, "And it is our belief, based on our investigation and review of everything, is that he's been truthful," "We want him to be truthful and we believe he has been," and, "But our understanding is the truth has been reduced to writing and the statement he provided to us." Without this express, in-court adoption of Saunders's statement, our view may have been different. Whether lesser actions by a prosecutor manifesting an adoption of a statement, such as merely submitting the statement in support of a court filing or acceptance of a plea, would render the statement admissible against the government in a subsequent proceeding remains to be seen.

*Id.* at 326, 941 A.2d 1107. The Court, however, concluded that "the error in excluding the testimony was harmless, and thus, Bellamy's conviction must be affirmed." *Id.* at 330, 941 A.2d 1107 (footnote omitted).

Although the Court of Appeals stated, in *Bellamy,* that it remained to be seen whether an action, such as merely submitting a statement in support of a court filing or acceptance of a plea, would render the statement admissible, *Bella-*

*my* is obviously distinguishable. In this case, appellant produced a driver's license when asked for identification by a law enforcement officer, and in doing so, sought to convince the officer that information on the license pertained to him. In producing the license and giving it to the detective, appellant effectively stated that he was the person described by the information thereon. As such, appellant manifested an adoption or a belief in the truth of the information on the license. For all of the reasons set forth above, we conclude that Detective Klezia's testimony was admissible pursuant to the exception to the hearsay rule for adoptive admissions set forth in Md. Rule 5–803(a)(2).

## II.

Appellant contends that the State attempted to prove the content of his driver's license through the testimony of Detective Klezia in violation of the best evidence rule. Appellant argues that the best evidence rule requires the content of a document to be proven "through the original, or a duplicate copy of that document if the original is unavailable through no fault of the State." Appellant contends that the best evidence rule required that the original Florida driver's license be admitted into evidence at trial to prove its content.

The State contends that it is unclear whether the best evidence rule applies to the State's use of Detective Klezia's testimony to prove appellant's age as it was not seeking to prove the content of the license but rather an independent fact—appellant's age.

Preliminarily, we conclude the issue is not preserved for review. At trial, when asked the basis for his objection to the prosecutor's question to Detective Klezia regarding appellant's age, appellant's counsel replied: "It's hearsay." Although appellant's counsel commented, that there is "better evidence," appellant's counsel did not challenge the admission of Detective Klezia's testimony under the best evidence rule. Pursuant to Md. Rule 4–323(a), we conclude that our scope of review is limited to the basis stated by appellant's counsel

when making a contemporaneous objection. Md. Rule 4–323(a) ("An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived."); *see also, Leuschner v. State,* 41 Md. App. 423, 436, 397 A.2d 622, *cert. denied,* 444 U.S. 933, 100 S.Ct. 279, 62 L.Ed.2d 192 (1979) ("While it is true that under Maryland Rule [4–323(a)] it is not necessary to state the grounds for an objection to evidence unless requested by the court, if, however, grounds are asked for or volunteered, that party will be limited on appeal to a review of those grounds and will be deemed to have waived any ground not stated.") (citation omitted).

Appellant's counsel's oblique reference to "better evidence" was an indication that the State might have proven appellant's date of birth through a different means such as, a birth certificate, testimony of a relative, or asking that the court take judicial notice of appellant's age. In stating there was "better evidence," appellant's counsel merely indicated to the circuit court that the State could prove appellant's date of birth by some other means, other than the Florida license or Detective Klezia's testimony. Appellant's counsel did not argue the applicability of the best evidence rule or the absence of any exception to the best evidence rule. Appellant's counsel did not rely upon any case law related to the best evidence rule. As such, we conclude that appellant did not raise the best evidence rule as the basis for his objection to Detective Klezia's testimony regarding his age. Clearly, the circuit court did not rule on any issue pertaining to the best evidence rule. Md. Rule 8–131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court."). In this case, however, as the State did not raise the issue of waiver on appeal, we will nonetheless address the merits.

We are not persuaded by appellant's contention that the best evidence rule is applicable to Detective Klezia's testimony. The best evidence rule, as set forth in Md. Rule 5–1002, states: "To prove the content of a writing, recording, or

photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." Maryland appellate courts have "long recognized that the Best Evidence Rule is applicable in criminal cases in Maryland." *State v. Cabral,* 159 Md.App. 354, 382, 859 A.2d 285 (2004) (citing *Carter v. State,* 367 Md. 447, 469, 788 A.2d 646 (2002) (Raker, J., dissenting)).

 "The Best Evidence Rule requires, as an evidentiary matter, that an original writing must be produced to prove its existence and contents[.]" *Carter,* 367 Md. at 469, 788 A.2d 646 (Raker, J., dissenting). "[T]he purposes of the best-evidence rule are to ensure that the exact terminology of a writing is presented to the court and to guard against fraud[.]" *Trimble v. State,* 300 Md. 387, 403, 478 A.2d 1143 (1984), *superseded by statute on other grounds as stated in, Anderson v. Dep't of Health & Mental Hygiene,* 310 Md. 217, 220, 528 A.2d 904 (1987). In *Sewell v. State,* 34 Md.App. 691, 692–93, 368 A.2d 1111, *cert. denied,* 280 Md. 734 (1977), this Court discussed the Best Evidence Rule as follows:

> Under that rule, sometimes referred to as the Original Document Rule, the best evidence of the contents of a writing is deemed to be the writing itself. Oral testimony or other secondary evidence of the terms of the writing may not be offered as a substitute for the original document itself unless the proponent can demonstrate an adequate reason for the non-production of the original. Instructive in this regard is McCormick, *Law of Evidence* (1st ed., 1954), Ch. 23, "The Requirement of the Production of the Original Writing as the 'Best Evidence,'" § 201, "Excuses for Non-production of the Original Writing—(a) Loss or Destruction," p. 413:
>
> > "The professed purpose of the production of documents rule being to secure, not the writing at all hazards, but the best *obtainable* evidence of its contents, if the document cannot as a practical matter be produced, because of its loss or destruction, the production of the original is excused and other evidence of its contents is received. . . .

Loss or destruction may sometimes be provable by direct evidence but more often the only available method is circumstantial, usually by proof of search for the document and inability to secure it."

(Emphasis in original).

■ The best evidence rule exists to express a preference for introducing originals over copies of writings. In *Cabral*, 159 Md.App. at 384, 859 A.2d 285, this Court stated:

As Professor McLain has explained in her treatise, the best evidence rule "is misleadingly named, as it is not a general requirement that each party present only the 'best evidence' available on every point, so as to preclude other probative evidence." 6A L. McLain, MARYLAND EVIDENCE, § 1001:1, at 535 (2001). What this Court said in *Cooper v. State*, 41 Md.App. 392, 398, 397 A.2d 245 (1979), is also noteworthy:

The Best Evidence Rule states a *preference* for original documents, but does not foreclose use of secondary evidence "after a proper foundation has been laid showing good and sufficient reasons for the failure to produce the primary evidence." *Forrester v. State*, 224 Md. 337, 349, 167 A.2d 878, 884 (1961). The issue usually arises when the original document has been lost or destroyed.

(Emphasis in original).

■ As a threshold matter, we note that the underpinning of the best evidence rule is that the best evidence of the contents of a writing is deemed to be the writing itself. *Sewell*, 34 Md.App. at 692, 368 A.2d 1111. In this case, the State did not seek to prove the content of the license itself as it would if it had been attempting to prove the terms of a contract or will. For example, the State did not seek to prove the existence of the Florida license or to resolve a dispute concerning the accuracy of information contained in the license. Instead, the State sought to establish that appellant was over the age of twenty-one.

Appellant was convicted of third-degree sexual offense and sexual solicitation of a minor. Pursuant to C.L. § 3–307(a)(4):

"A person may not: ... engage in a sexual act with another if the victim is 14 or 15 years old, and the person performing the sexual act is at least 21 years old[.]" C.L. § 3–324(b) provides: "A person may not, with the intent to commit a violation of ... § 3–307 of this subtitle ... knowingly solicit a minor, or a law enforcement officer posing as a minor, to engage in activities that would be unlawful for the person to engage in under ... § 3–307[.]." Under the statutes, the State was required to prove that appellant was over the age of twenty-one. The State, through Detective Klezia's testimony, sought to demonstrate that appellant was over the age of twenty-one. The content of the license was not at issue, and at trial, appellant did not challenge the validity or "trustworthiness" of the Florida's license.

Appellant has failed to identify a single dispute or issue pertaining to the content of the license. Neither in the circuit court nor before this Court has appellant claimed that the license was not accurate, or that the date testified to by Detective Klezia was not his date of birth. Appellant did not contend that Detective Klezia made a mistake about the date of birth on the license, that the license did not exist, or that he did not actually present the license to Detective Klezia. Thus, the case did not involve a dispute about the content or the terms of the license. Rather, the State sought to prove that appellant was over the age of twenty-one through the testimony of a witness who viewed a driver's license that appellant supplied to him, and the witness was available for cross-examination regarding his interaction with appellant.[3] For the reasons set forth above, we conclude that the best evidence rule is inapplicable to Detective Klezia's testimony regarding appellant's date of birth.[4]

---

3. The record reflects that appellant did not cross-examine Detective Klezia.

4. Due to this Court's conclusion that the best evidence rule is inapplicable to Detective Klezia's testimony we need not address the parties' contentions regarding the applicability of the exception to the best evidence rule set forth in Md. Rule 5–1004(c).

JUDGMENTS OF THE CIRCUIT COURT FOR CHARLES COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.